per curiam;
El Ledo. Josué Daniel de León Rodríguez (licenciado De León o el querellado) fue admitido al ejerci-cio de la abogacía el 14 de enero de 1987 y a la notaría el 9 de marzo de 1989.(1)
*381 El 31 de agosto de 2006, la entonces Juez del Tribunal de Primera Instancia, Sala Superior de San Juan, Hon. Carmen A. Bravo Cerezo, trajo ante nuestra atención posibles violaciones éticas cometidas por el licenciado De León durante el trámite del Caso Civil Núm. KEF2004-1243, Administración de Terrenos de Puerto Rico v. Municipio de Luquillo, Sucn. de Jovito Dávila Rodríguez, etc. Luego de evaluar toda la prueba que obra en autos, concluimos que en efecto el querellado incurrió en serias violaciones éticas durante el transcurso del mencionado caso.
Veamos los hechos que dan base a nuestra jurisdicción disciplinaria.
I
El 30 de noviembre de 2004, la Administración de Terre-nos de Puerto Rico (Administración de Terrenos) presentó ante el Tribunal de Primera Instancia, Sala Superior de San Juan, una Petición de Expropiación Forzosa. Conjun-tamente, consignó $40,240 a favor de las Sucesiones de Jovito Dávila Rodríguez y Teresa Pagán Rivera (Sucesión Dávila Pagán o Sucesión)(2) como compensación por la ex-propiación de una estructura de su propiedad ubicada en el municipio de Luquillo.
El 29 de julio de 2005, el licenciado De León compareció en representación de la Sucesión Dávila Pagán y solicitó el retiro de los fondos consignados. Le indicó al tribunal que contaba con la autorización de los miembros de la Sucesión para recibir todos los cheques y que, una vez recibidos, se encargaría de hacerlos llegar a los herederos. Para esto, y luego de varios trámites procesales, el 9 de diciembre de 2005 recibió once cheques para los miembros de la Suce- *382 sión, así como un cheque a su nombre en concepto de ho-norarios de abogado.(3)
El 11 de abril de 2006, mediante escrito presentado por derecho propio, el Sr. Enrique Dávila Pagán (señor Enrique Dávila), miembro de la Sucesión y cliente del quere-llado, informó al foro de instancia que el licenciado De León cambió seis de los doce cheques, para un total de $20,332. No obstante, el dinero no lo entregó a sus correspondientes beneficiarios.(4) El señor Enrique Dávila acom-pañó su escrito con copia de todos los cheques cancelados y solicitó que se citara al licenciado De León para una vista.
En atención a lo anterior, el foro primario señaló una vista para el 14 de junio de 2006, a la cual el licenciado De León no compareció. Comparecieron los señores Enrique Dávila y José Jovito Dávila López (señor José Dávila) (con-juntamente, los señores Dávila), ambos miembros de la Su-cesión y clientes del querellado. Estos manifestaron que el licenciado De León les llamó en varias ocasiones para in-dicarles que estaba enfermo y que interesaba reunirse con ellos para entregarles el dinero que les había retenido. El tribunal tuvo conocimiento de lo informado y señaló una vista de seguimiento para el 16 de agosto de 2006, a la cual, nuevamente, el querellado no compareció ni excusó su incomparecencia. Por ello, el foro de instancia emitió una orden en contra del licenciado De León para que mos-trara causa por la cual el tribunal no debía actuar en rela-ción con los planteamientos sobre la falta de entrega de los cheques. Asimismo, señaló vista para el 29 de agosto de 2006 y ordenó que se notificara la Minuta personalmente al querellado por conducto de la Oficina de Alguaciles. El día de la vista, el alguacil de la Sala informó que la citación *383 era negativa, ya que no se pudo localizar. Como resultado de lo anterior, mediante Resolución de 31 de agosto de 2006, el Tribunal de Primera Instancia refirió a nuestra atención la conducta del querellado.
Así las cosas, mediante Orden de 12 de septiembre de 2006, el Tribunal de Primera Instancia hizo constar que el licenciado De León había comparecido personalmente “a exponer las razones de su incomparecencia a las vistas se-ñaladas”, por lo que procedió a señalar una vista sobre el estado de los procedimientos para el 11 de octubre de 2006. En esa ocasión, cuando se atendió el caso por primera vez, el querellado compareció, mas no así sus clientes. El licen-ciado De León informó que se proponía citar a los clientes para que comparecieran a su oficina el próximo miércoles, 18 de octubre de 2006, por lo que solicitó un señalamiento para esa misma semana. Por consiguiente, se fijó una au-diencia para el 26 de octubre de 2006, a las 9:00 a.m.
El día de la vista, el querellado no compareció. El tribunal hizo constar para récord que recibió una llamada de la oficina del querellado para informar que éste no podía com-parecer porque estaba hospitalizado, así que la vista se reasignó para el 9 de noviembre de 2006.(5)
El 8 de noviembre de 2006, mediante moción, el licenciado De León solicitó la transferencia de la vista para el 16 de noviembre de 2006 porque se encontraba litigando en un juicio por jurado en el Tribunal de Primera Instancia, Sala Superior de Carolina. Se comprometió a “adelantar las gestiones pendientes con la Sucesión Dávila [Pagán] antes de ese día, para no cargar el calendario del Tribunal y el de los miembros de la Sucesión [...].”
A pesar de asignarse la vista para la fecha que solicitó el querellado, éste no compareció ni se excusó.(6) Ante esto, el *384 tribunal de instancia emitió una Orden para que el licen-ciado De León mostrara causa por la cual no se le debía declarar incurso en desacato por su reiterado incumpli-miento con las citaciones del tribunal. Señaló vista de des-acato para el 30 de noviembre de 2006 y ordenó que la Minuta se notificara personalmente al querellado.
El licenciado De León tampoco compareció a la vista de desacato. No obstante, como no surgió del expediente que la Minuta se le notificó personalmente,(7) el tribunal de instancia señaló la vista para el 13 de diciembre de 2006 y, luego, a solicitud del querellado, para el 23 de enero de 2007, a las 9:00 de la mañana. Ese mismo día, a las 8:33 de la mañana, el querellado presentó una nueva solicitud de transferencia de vista,(8) la cual fue declarada no ha lugar en corte abierta. A esta vista, que se celebró ante una nueva juez,(9) comparecieron los señores Dávila y la Leda. Valgina Rodríguez Calderón (licenciada Rodríguez), en re-presentación de la Administración de Terrenos. La licen-ciada Rodríguez informó, entre otras cosas, que en el caso se había dictado sentencia, por lo cual, quedó pendiente únicamente que el licenciado De León les devolviera el dinero a sus clientes. Informó, además, que a pesar de que éste había acordado reunirse con sus clientes para resolver el asunto, aún no lo había hecho, ni se había personado a las vistas señaladas. Ante su incomparecencia, el foro de instancia ordenó al querellado que mostrara causa por la cual no se le debían imponer sanciones económicas en su carácter personal. Además, pautó una vista para el 26 de *385 abril de 2007 y ordenó que se citara personalmente al li-cenciado De León bajo el apercibimiento de que si no com-parecía, podría ser declarado incurso en desacato y arres-tado sin más oírle.
A la Vista de 26 de abril de 2007 comparecieron los se-ñores Dávila, la licenciada Rodríguez y el Ledo. Angel Toledo López (licenciado Toledo), en sustitución del querellado. Según surge de la Minuta, el licenciado Toledo informó al Tribunal que el querellado estaba atravesando por una situación muy difícil porque su padre estaba gra-vemente enfermo. Expresó, además, que el licenciado De León “le solicitó unirse a la representación legal para tra-bajar en conjunto un proceso de adelanto de herencia” y para que “actuarla] como enlace entre el licenciado [De León] y la parte con interés, a los efectos de entregar el dinero adeudado en las próximas dos semanas”. Por su parte, el señor José Dávila manifestó que “el problema es la falta de credibilidad y el incumplimiento” del querellado. Como resultado, el foro primario señaló una vista de segui-miento para atender el asunto de los cheques bajo juramento.
El 17 de mayo de 2007 se celebró la vista de seguimiento. El tribunal informó que recibió una copia de cortesía de la moción de transferencia presentada por el licenciado De León ese mismo día a las 9:52 a. m. En esta informa que, por una condición de salud, no podía compa-recer y solicitaba la transferencia de la vista. No obstante, debido a que el querellado no acreditó su incapacidad para comparecer, el foro de instancia declaró sin lugar la solici-tud y celebró la vista en su ausencia. En esta, los señores Dávila informaron, bajo juramento, que el licenciado De León no se había comunicado con ellos, ni les había entre-gado los $20,332 que sumaba lo que les había retenido a varios miembros de la Sucesión. Además, el Sr. Enrique Dávila indicó que la firma endosando el cheque emitido a su favor no era la suya.
*386 Como consecuencia de lo anterior, el foro de instancia refirió una copia de las declaraciones juradas de los seño-res Dávila al Fiscal de Distrito de San Juan para que eva-luara la posibilidad de “presentar acciones criminales” en contra del licenciado De León.
El 14 de junio de 2007, el licenciado De León compareció ante el foro primario y acreditó haber tramitado la entrega de cuatro de los cheques de la Sucesión.(10) El 2 de agosto de 2007, el querellado presentó ante el tribunal de instan-cia un escrito titulado Moción Informativa y sobre Consig-nación de Cheques en el cual indicó que el 2 de junio de 2007 le entregó seis cheques a la notario Nuria María del Rocío Sánchez Díaz para que, junto con un relevo de res-ponsabilidad, los entregara a los miembros de la Sucesión y levantara un acta a estos efectos. Informó, además, que luego de múltiples gestiones, no había conseguido las direcciones postales de Heriberto y Jovita, ambos Dávila Casanova, por lo que consignaría en la Secretaría el dinero que les correspondía a éstos. El foro primario aceptó la consignación.
II
Luego de evaluar la Resolución de 31 de agosto de 2006 del Tribunal de Primera Instancia elevada ante nos, el 26 de enero de 2007 le concedimos al licenciado De León el término de veinte días para que se expresara sobre ella, con el apercibimiento de suspensión indefinida de la abogacía.
Luego de solicitar tres prórrogas,(11) el querellado nos informó mediante Moción en Cumplimiento de Orden de 10 de agosto de 2007 que ya les había devuelto todo el *387 dinero a sus clientes. También alegó que la conducta des-crita por el Tribunal de Primera Instancia la ocasionó una condición emocional y que nunca fue su intención retener permanentemente el dinero de sus clientes.
El 16 de noviembre de 2007 referimos el asunto al Pro-curador General para la correspondiente investigación e informe. Aún pendiente esta investigación, el 11 de febrero de 2008 suspendimos al querellado del ejercicio de la abogacía por otra queja presentada anteriormente. In re De León Rodríguez, 173 DPR 80 (2008).(12) El 25 de septiembre de 2008 fue reinstalado, luego de evaluar su solicitud. In re De León Rodríguez, 174 DPR 862 (2008).
Por último, el 26 de octubre de 2011, el Procurador General sometió su Informe para el caso de autos. Determinó que el querellado infringió el Código de Etica Profesional “al no acatar las órdenes sobre vistas emitidas por el [T]ribunal de [P]rimera [I]nstancia, no asistir a las vistas señaladas por dicho tribunal ni excusar su incomparecen-cia, y al retener y cambiar cheques emitidos para beneficio de sus clientes [...].” Asimismo, sostuvo que “las razones que expone el abogado para explicar su conducta, ni la posterior devolución del dinero, en lo más mínimo justifican o excusan sus actuaciones”.
Examinado el Informe y la réplica del querellado, orde-namos al Procurador General que presentara la correspon-diente querella, la cual sometió el 2 de diciembre de 2011. Al licenciado De León se le imputaron los cargos siguien-tes:
Cargo I
El licenciado Josué De León Rodríguez infringió el Canon 9 de Ética Profesional, 4 L.P.R.A., Ap. IX, cuando hizo caso omiso de las órdenes que emitiera el Tribunal de Primera Instancia, a pesar de haber recibido dichas órdenes, para que compare-ciera ante sí a explicar el cobro no autorizado de los cheques emitidos para beneficio de sus clientes.
*388 Cargo II
El licenciado Josué De León Rodríguez violentó el Canon 12 de Ética Profesional, 4 L.P.R.A., Ap. IX, al no comparecer a las vistas señaladas por el Tribunal de Primera Instancia para que explicara la conducta que le imputaba su cliente Enrique Dávila Pagán y no justificar su incomparecencia.
Cargo III
El licenciado Josué De León Rodríguez actuó en contravención al deber ético que le impone el Canon 23 de Ética Profesional, 4 L.P.R.A., Ap. IX, al retener, cambiar y mezclar con sus pro-pios bienes el dinero que le fuera entregado para beneficio de sus clientes. En consideración a que la relación abogado cliente es de naturaleza fiduciaria, que debe estar fundamen-tada en la honradez absoluta, el letrado debió inmediatamente entregar a sus clientes el dinero que para beneficio de ellos recibió en el año 2005 y no retenerlo hasta julio y agosto de 2007 cuando, por razón de la queja génesis de esta Querella, procedió a devolverlo.
Cargo IV
La conducta del licenciado Josué De León Rodríguez, descrita en los cargos anteriormente imputados violentó las disposicio-nes del Canon 38 de Ética Profesional, 4 L.P.R.A., Ap. IX, el cual dispone que todo abogado debe esforzarse, al máximo de su capacidad, en la exaltación del honor y la [dignidad] de su profesión, evitando hasta la apariencia de conducta profesio-nal impropia. (Citas omitidas). Querella, pág. 3.
Después de recibir la contestación del querellado, desig-namos a la Leda. Eliadís Orsini Zayas como Comisionada Especial (Comisionada Especial) para que recibiera la prueba y nos rindiera un Informe con sus determinaciones de hecho y recomendaciones en derecho. El 2 de julio de 2013 se presentó el Informe.(13)
La Comisionada Especial determinó en su Informe que “es indiscutible que el abogado querellado acepta que ocu- *389 rrieron los eventos (que no es otra cosa que una apropia-ción indebida)”. Informe de la Comisionada Especial, pág. 14.(14) Aunque entendió que el querellado cambió los che-ques con autorización de sus clientes, señaló que el pro-blema surgió porque una vez cambiados, éste “retuvo para sí el importe de los seis [...] cheques; los depositó en su cuenta de la oficina, por lo que mezcló sus dineros con los de ellos” y tardó aproximadamente un año y ocho meses en devolverlos. íd., pág. 4. Además, cuestionó las excusas que dio el licenciado De León para justificar sus incomparecen-cias a las vistas, pues, “si [...] estaba sufriendo situaciones emocionales por razón de la enfermedad de su padre, siendo de tal naturaleza que le impedía comparecer a la sala de expropiaciones[, ...] ¿cómo podía [...] simultánea-mente atender otros múltiples asuntos; y algunos de gran envergadura y posible tensión, como era el caso por jurado de alegado gran interés público que envolvía a varios coacusados- policías todos”. íd., págs. 23-24.
En síntesis, la Comisionada Especial determinó que, a pesar de todas las oportunidades que se le concedieron al licenciado De León para que rectificara su conducta, éste, “o no comparecía a las vistas pautadas, o hacía represen-taciones ante la Juez a cargo y sus cliente [s] de que en los próximos días solucionaría el problema; lo cual incumplía; y así tra[n]scurrió el tiempo, sin él devolver el dinero a sus clientes. El abogado siempre se excusaba con razones que de ningún modo eran justificación para su conducta”. íd., pág. 2. No fue sino “hasta llegado el momento más crítico, cuando el asunto se iba a referir al Fiscal de Distrito”, que el querellado devolvió el dinero. íd., pág. 35. Concluyó que los hechos establecen, con prueba clara, robusta y convin-cente, que el licenciado De León violó los Cánones 9, 12, 23 *390 y 38 del Código de Ética Profesional y recomendó la sus-pensión indefinida del ejercicio de la abogacía.
El 23 de julio de 2013, el querellado presentó una ré-plica al Informe de la Comisionada Especial. (15) Sometido el caso ante nuestra consideración, procedemos a resolver.
III
Al licenciado De León se le imputa violar los Cánones 9, 12, 23 y 38 del Código de Ética Profesional. Veamos qué establecen.
A. Respeto hacia los tribunales
El Canon 9 del Código de Ética Profesional impone a los miembros de la profesión legal el deber de “observar para con los tribunales una conducta que se caracterice por el mayor respeto”. En innumerables ocasiones hemos expre-sado que la naturaleza de la función del abogado requiere una escrupulosa atención y obediencia a las órdenes judiciales. In re García Ortiz, 187 DPR 507 (2012); In re Fidalgo Córdova, 183 DPR 217 (2011). La desatención a *391 esas órdenes constituye un serio insulto a la autoridad de los tribunales e infringe este canon. In re Dávila Toro, 179 DPR 833 (2010); In re Hoffman Mouriño, 170 DPR 968 (2007).
B. Puntualidad y tramitación de las causas
Por su parte, el Canon 12 del Código de Ética Profesional establece lo siguiente:
Es deber del abogado hacia el tribunal, sus compañeros, las partes y testigos el ser puntual en su asistencia y conciso y exacto en el trámite y presentación de las causas. Ello implica el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución. Sólo debe solicitar la suspensión de vista cuando existan razones poderosas y sea indispensable para la protec-ción de los derechos sustanciales de su cliente. 4 LPRAAp. IX.
El citado canon le impone, además, a los profesionales del derecho, el deber de tramitar los casos con puntualidad y diligencia. In re Hernández González, 188 DPR 721 (2013); In re Vélez Báez, 176 DPR 201 (2009); In re Vélez Lugo, 168 DPR 492 (2006). Este deber se cumplirá en todas las etapas de un litigio e incluye la más estricta observancia de las órdenes del tribunal. In re Rivera Ramos, 178 DPR 651 (2010); In re Soto Colón, 155 DPR 623 (2001). Así, pues, la continua desobediencia de las órdenes de un tribunal quebranta el referido canon. In re Rivera Ramos, supra. Igualmente, la ausencia injustificada a una vista citada debidamente también constituye una violación. In re García Ortiz, supra; In re León Malavé, 172 DPR 1036 (2008). Un abogado no tiene la discreción para decidir a qué vistas comparece o no; esto le compete al tribunal. In re León Malavé, supra. Por otro lado, recordemos que los señalamientos conflictivos no son razones válidas para suspender y posponer vistas que han sido señaladas con *392 tiempo. In re Rivera Ramos, supra; In re Velez Lugo, supra; Neri Tirado v. Tribunal Superior, 104 DPR 429 (1975).(16)
Ahora bien, no toda falta de diligencia amerita una sanción ética. En In re García Ortiz, supra, pág. 516, indicamos que
[...] los cánones de ética profesional no son, ni deben conver-tirse, en armas procesales adicionales para adelantar los intereses individuales de una de las partes en un caso. Lluch v. España Service Sta., 117 DPR 729 (1986). La falta de diligencia que da lugar a sanciones éticas tiene que ser crasa, que denote falta de competencia o un menosprecio al sistema de administración judicial. Id. Normalmente, los tribunales de instancia deben atender y resolver las dilaciones o los inciden-tes procesales en un caso. Id.
C. Manejo de los bienes del cliente
De otra parte, el Canon 23 del Código de Ética Profesional dispone que
[l]a naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundadas en la honradez absoluta. En particular, debe darse pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión y no debe mezclarlos con sus propios bienes ni permitir que se mezclen. 4 LPRA Ap. IX.
Con relación a este canon, hemos expresado que “ ‘la confianza entre abogado y cliente, en particular, el escru-puloso manejo de fondos, constituye elemento inseparable que se proyecta no sólo dentro del foro togado puertorriqueño, sino en el respeto y la estima ante la imagen pú-blica’ ”. (Citas omitidas). In re Ramírez Ferrer, 147 DPR 607, 613 (1999), citando a In re Félix, 111 DPR 671, 674 (1981). Véase, además, In re Bonilla Berlingeri, 175 DPR 897 (2009). En numerosas ocasiones hemos señalado que *393 cuando los abogados retienen fondos que pertenecen a sus clientes, lesionan profundamente la profesión legal e infringen los postulados del aludido canon. In re Colón Hernández, 189 DPR 275 (2013); In re Rivera Lozada, 176 DPR 215 (2009). Tal conducta menoscaba la naturaleza fiduciaria de la relación abogado-cliente y lesiona la imagen de la profesión legal en la comunidad. In re Colón Hernández, supra; In re Cid, 173 DPR 40 (2008). “Ni la devolución del dinero retenido al cliente, ni la falta de intención para apropiárselos permanentemente eximen a un abogado de la sanción disciplinaria correspondiente”. In re Colón Hernández, supra, pág. 284. “La dilación en la devolución de los fondos de por sí es causa suficiente para tomar medidas disciplinarias contra el abogado”. In re Vázquez O’Neill, 121 DPR 623, 628 (1988). Véanse, además: In re Ramírez Ferrer, supra; In re Arana Arana, 112 DPR 838 (1982).
D. Preservación del honor y dignidad de la profesión
Por último, el Canon 38 del Código de Ética Profesional le impone a los miembros de la profesión legal el deber de preservar el honor y la dignidad de la profesión. Requiere, entre otras cosas, que todo abogado se esfuerce “al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia”. 4 LPRA Ap. IX. Asimismo, exige que “todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable”. Id. Conforme a este precepto ético, he-mos señalado que “cada abogado es un espejo en el cual se refleja la imagen de la profesión, por lo que debe actuar con limpieza, lealtad y el más escrupuloso sentido de la responsabilidad”. In re Bonilla Berlingeri, supra, pág. 904, citando a In re Curras Ortiz, 174 DPR 502 (2008). Véase, además, In re Ojeda Martínez, 185 DPR 1068 (2012).
*394 E. Informe de la Comisionada Especial
En reiteradas ocasiones hemos expresado que, aunque no estamos obligados a sostener las determinaciones de hecho de un Comisionado Especial, estas merecen nuestra deferencia, salvo que se demuestre pasión, prejuicio, parcialidad o error manifiesto en su apreciación de la prueba. In re García Ortiz, supra; In re García Aguirre, 175 DPR 433 (2009). Sin embargo, esa deferencia aplica cuando las determinaciones de hecho se fundamentan en prueba testifical, pues es cuando el Comisionado Especial se encuentra en una mejor posición para aquilatar la prueba. In re García Ortiz, supra; In re González Ortiz, 162 DPR 80 (2004); In re Morales Soto, 134 DPR 1012 (1994). Pero, “cuando esas determinaciones estén basadas en la prueba documental que obra en el expediente, el tribunal revisor está en igual posición que el Comisionado Especial y, por ende, puede adoptar, modificar o rechazar tal informe”. (Cita omitida). In re García Ortiz, supra, pág. 521.
Establecido el marco doctrinal aplicable, procedemos a determinar si el querellado incurrió en las violaciones imputadas.
IV
Luego de evaluar el Informe de la Comisionada Especial, los escritos presentados por el querellado y toda la prueba que contiene el expediente del caso, concluimos que el licenciado De León faltó a los deberes impuestos en los Cánones 9, 12, 23 y 38 del Código de Ética Profesional.
Como observamos, el licenciado De León recibió once cheques del Tribunal de Primera Instancia a nombre de sus clientes, de los cuales únicamente entregó cinco a sus respectivos beneficiarios. Retuvo los restantes seis cheques y los depositó en su cuenta comercial. Por más de un año, el querellado ignoró los reclamos de sus clientes para que *395 les devolviera el dinero. No fue hasta que el foro de instan-cia refirió el asunto al Fiscal de Distrito que devolvió el dinero en su totalidad.
Según las circunstancias de este caso, es forzoso con-cluir que el licenciado De León violó los principios éticos que emanan del Canon 23 del Código de Etica Profesional. De los hechos establecidos anteriormente se deduce que el querellado no informó diligentemente sobre el dinero de sus clientes y mezcló los bienes de sus representados con los suyos. Luego de transcurrir aproximadamente un año y ocho meses, y tras múltiples requerimientos judiciales, por fin devolvió el dinero. Como retuvo indebidamente los fon-dos pertenecientes a sus clientes, el querellado incumplió con su deber de fiducia hacia éstos y demostró una actitud de menosprecio hacia sus obligaciones como togado. Según hemos expresado, ni la posterior devolución del dinero re-tenido, ni la falta de intención de apropiárselos permanen-temente eximen al licenciado De León, pues la mera dila-ción en la entrega es suficiente para imponerle una sanción disciplinaria.
Asimismo, resolvemos que al desatender reiteradamente las órdenes del foro de instancia y no comparecer a las vistas, a pesar de haber sido citado, el licenciado De León violó los Cánones 9 y 12 del Código de Ética Profesional. El incumplimiento continuo del querellado con los requerimientos del tribunal causó dilaciones indebidas en la tramitación y solución del caso, y demostró un grave menosprecio hacia la administración judicial. De igual ma-nera, por más de un año, el querellado le faltó el respeto al tribunal, a sus clientes y a sus compañeros abogados, pues continuamente hacía representaciones que luego no cumplía.(17)
Por último, no albergamos duda de que la conducta del *396 querellado no estuvo a la altura de los postulados del Canon 38 del Código de Ética Profesional. Al no actuar con integridad, lealtad y el más escrupuloso sentido de respon-sabilidad, lesionó la reputación de la profesión legal en la comunidad y quebrantó la confianza depositada en él como miembro de la clase togada.
De acuerdo con lo anterior, sostenemos que las violacio-nes del licenciado De León a los Cánones 9, 12, 23 y 38 del Código de Ética Profesional quedaron probadas mediante prueba clara, robusta y convincente.
V
Nos resta determinar cuál sanción le debemos imponer al querellado.
Reiteradamente hemos mencionado que, al momento de determinar la sanción disciplinaria, nos sirven de guía los factores siguientes:
[...] (i) la buena reputación del abogado en la comunidad; (ii) su historial previo; (iii) si ésta constituye su primera falta y si alguna parte ha resultado perjudicada; (iv) la aceptación de la falta y su sincero arrepentimiento; (v) si se trata de una con-ducta aislada; (vi) el ánimo de lucro que medió en su actua-ción]; (vii) resarcimiento al cliente, y (viii) cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien de acuerdo con los hechos. In re Quiñones Ayala, 165 DPR 138, 147 (2005). Véanse: In re Ojeda Martínez, supra; In re Valentín Custodio, 187 DPR 529 (2012).
Asimismo, debemos tener presente que es nuestro de-ber, en lo posible, “tratar faltas parecidas de modo análogo y [así] mantener la reglamentación ético-profesional como cuerpo normativo coherente”. In re Díaz Alonso, Jr, 115 DPR 755, 761 (1984). Por ello, hemos expresado que “[c]asos similares ameritan sanciones similares”. In re González Acevedo, 165 DPR 81, 104 (2005). Ahora bien, no podemos ignorar la realidad de que cada caso es único, por lo que, en última instancia, las circunstancias particulares *397 de cada uno son determinantes al momento de imponer la sanción.
En el caso de autos, consideramos como atenuante que, desde un principio, el querellado aceptó la conducta impu-tada y mostró un sincero arrepentimiento durante el pro-cedimiento disciplinario. No obstante, el hecho de que fue suspendido anteriormente del ejercicio de la abogacía, así como la gravedad de la conducta en el presente caso y las sanciones impuestas en casos anteriores, nos obligan a de-cretar la suspensión indefinida del licenciado De León del ejercicio de la abogacía, a partir de la notificación de la presente Opinión per curiam.(18)
Le ordenamos, por lo tanto, notificar a todos sus clientes su inhabilidad para continuar representándolos y devolver los expedientes de los casos pendientes, así como los hono-rarios recibidos por trabajos no realizados. Además, deberá informar, oportunamente, de su suspensión a los foros ju-diciales y administrativos del país. De igual forma, debe certificar a este Tribunal el cumplimiento con lo aquí esta-blecido dentro de treinta días a partir de la notificación de esta Opinión per curiam y su correspondiente Sentencia.
El Alguacil de este Tribunal incautará la obra y el sello notarial del licenciado De León, inclu su sello notarial y los entregará a la Oficina de Inspección de Notarías para el correspondiente examen e informe.

Se dictará Sentencia de conformidad.

La Jueza Asociada Señora Pabón Charneco concurrió con la determinación del Tribunal e hizo constar la expre-sión siguiente: “La Jueza Asociada Señora Pabón Charneco *398 está de acuerdo con que procede imponerle una sanción al abogado objeto de la presente acción disciplinaria. No obs-tante, en lugar de una suspensión indefinida de la práctica de la abogacía, suspendería al licenciado De León Rodrí-guez por dos años”.

 El 8 de octubre de 1998, el querellado cesó voluntariamente del ejercicio de la notaría y fue readmitido el 13 de septiembre de 2002.

 La Sucesión Dávila Pagán se compone de: Ana, Ángel Luis, Aurea Luz, Carmen María, Enrique, José Jovito, María Cristina y Virginia, todos de apellidos Dávila Pagán; Silvia Rodríguez Pagán; Heriberto y Jovita, ambos Dávila Casanova.

 Mediante escrito presentado ante el tribunal de instancia, la Sucesión Dávila Pagán autorizó que se le dedujera de su compensación los honorarios de abogado del querellado.

 Cuatro cheques, cada uno de $4,227 a nombre de Ana, Aurea Luz, Enrique y Virginia, todos Dávila Pagán. Además, dos cheques de $1,712 cada uno, a nombre de Heriberto y Jovita, ambos Dávila Casanova.

 Originalmente, la vista se reasignó para el 1 de noviembre de 2006. Sin embargo, a solicitud de ambas partes, se transfirió para el 9 de noviembre de 2006.

 En la Minuta de 16 de noviembre de 2006 se hizo constar que ese día se recibió una llamada telefónica de un alguacil del Tribunal de Primera Instancia, Sala de Carolina, quien informó que el licenciado De León había comenzado un juicio por *384 jurado en esa Sala, por lo que no podía comparecer. Por otro lado, del expediente se desprende que el 15 de noviembre de 2006, a las 4:06 p. m., el querellado presentó una moción solicitando la transferencia de la vista del próximo día.

 Según surge del expediente del caso, el 29 de noviembre de 2006, a las 4:24 p. m., el querellado presentó una solicitud para transferir la vista pautada para el 30 de noviembre de 2006, lo que aparenta indicar que, en efecto, el querellado fue debidamente notificado.

 En su solicitud, el querellado alegó que recibió la notificación de la vista el 22 de enero de 2007.

 Hon. Mabel Ramón Milián, juez superior.

 El Sr. Enrique Dávila recibió el cheque personalmente. A las señoras Ana Hilda, Aurea Luz y Virginia, todas Dávila Pagán, les envió los cheques por correo certificado.

 El querellado solicitó prórrogas mediante mociones el 22 de febrero, 12 de abril y 29 de mayo de 2007, respectivamente.

 Suspendimos al querellado del ejercicio de la abogacía por infringir los Cá-nones 9, 18 y 19 del Código de Ética Profesional, 4 LPRA Ap. EX.

 En su Informe, la Comisionada Especial hizo constar que la prueba documental presentada por ambas partes consistió en el expediente de la queja Núm. AB-2006-0252, la cual dio origen a este procedimiento disciplinario; el expediente de la querella de epígrafe, Núm. CP-2011-19, y el expediente del caso sobre Expropiación Forzosa, Civil Núm. KEF2004-1243 de la Administración de Terrenos de Puerto Rico v. Municipio de Luquillo, Sucn. de Jovito Dávila Rodríguez, etc. presentado ante el Tribunal de Primera Instancia, Sala Superior de San Juan. Por su parte, el que-rellado también presentó cuatro testigos de reputación.

 El 27 de marzo de 2013, la Comisionada Especial emitió un Acta de Conocimiento Judicial sobre los procedimientos en el expediente del caso sobre Expropiación Forzosa, Civil Núm. KEF2004-1243. Las partes la aceptaron en su totalidad el 24 de abril de 2013 y, posteriormente, fue incorporada en el Informe de la Comisionada Especial.

 En sus múltiples escritos, el querellado solicita que a la sanción que se le imponga en este caso le acreditemos los seis meses que estuvo suspendido como resultado de los procedimientos llevados a cabo en el caso In re De León Rodríguez, 173 DPR 80 (2008). El licenciado De León entiende que, conforme a lo resuelto en In re Flores Ayffán I, 170 DPR 126 (2007), se le debe acreditar esa suspensión, ya que ambas quejas eran coetáneas y el Procurador General las debió tramitar conjuntamente. No le asiste la razón. Aunque en ambos casos el Procurador General descontinuó los trámites de las quejas pendientes luego de que se suspendiera a los letrados por otras quejas, los hechos sustanciales de ambos claramente se distinguen.
En primer lugar, en In re Flores Ayffán I, supra, el abogado querellado no fue reinstalado hasta que culminaron los trámites de la queja desatendida previamente. Luego de solicitar la reinstalación, el querellado estuvo aproximadamente dos años sin poder ejercer la abogacía, esperando a ser reinstalado. Por el contrario, en el caso de autos, el licenciado De León fue reinstalado a la abogacía a los dos meses de haber solicitado su reinstalación y, actualmente, ejerce la profesión mientras se dilucida la queja que quedó pendiente. En segundo lugar, en el presente caso es muy difícil catalogar las quejas como coetáneas, ya que la que culminó con la suspensión de seis meses se presentó aproximadamente un año y medio antes que la queja del caso de autos.

 Es importante resaltar que “[l]os abogados son funcionarios del tribunal y, como tales, están llamados a ayudarlos en su misión de hacer justicia rápida y económica”. (Citas omitidas). Neptune Packing Corp. v. Wackenhut Corp., 120 DPR 283, 291 (1988).

 Recordemos que “[l]a misión de los abogados en la sociedad es altamente noble, pues están llamados a auxiliar a la recta administración de justicia. En ellos confían, no sólo las partes interesadas en los pleitos, sino las cortes mismas”. In re Díaz, 16 DPR 82, 92 (1910).

 Véanse, entre otros,: In re Colón Hernández, 189 DPR 275 (2013) (suspensión de un año por infringir, únicamente, el Canon 23 del Código de Ética Profesional); In re Cid, 173 DPR 40 (2008) (suspensión indefinida por quebrantar los Cánones 23 y 38 del Código de Ética Profesional); In re García Muñoz, 170 DPR 780 (2007) (separación indefinida por faltar a los deberes impuestos por los Cánones 19, 20 y 23 del Código de Ética Profesional); In re Vázquez O’Neill, 121 DPR 623 (1988) (suspensión indefinida por violar el Canon 23 del Código de Ética Profesional y las disposiciones de la anterior Ley Notarial de Puerto Rico, 4 LPRA ant. sec. 1001 y ss.).